IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |  | |
|---|---|---|---|
| PHILIP M. CROSBY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | CASE NO. 11-CV-305-WDS | |
| COOPER B-LINE, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

Before the Court is defendant's motion for summary judgment (Doc. 26) to which plaintiff has filed a response (Doc. 30) and defendant a reply (Doc. 31). Plaintiff, Philip M. Crosby, was employed by defendant Cooper B-Line and was subject to a Collective Bargaining Agreement. Plaintiff alleges that he was injured while working around July 28, 2010, filed a worker's compensation claim, took time off work to recover from his injuries, and when he returned to work he was then terminated in retaliation for filing his worker's compensation action.

I.     BACKGROUND

Plaintiff worked for defendant for approximately 10 years with, what he qualifies as, a "nearly perfect" employment record. In July of 2010, while working as part of the "flex tray" line, a portion of his middle finger was amputated when plaintiff tried to remove some flex tray from a master bundle. Before the injury, plaintiff had instructed a co-worker to "kick" the bundle while he grabbed out the materials which needed to be removed. His finger was

amputated by material which came out of the kicked bundle. He sought medical care for this injury and began receiving medical and worker's compensation benefits for temporary total disability.

Plaintiff reported back to work on September 13, 2010, after receiving a medical release. Upon his return, plaintiff, members of his Union and management held a meeting. Plaintiff was told he would not be allowed to return to his prior job assignment, but was offered a lesser pay position on the rivet line. He refused the offer. He was then asked by management how his injury occurred, and what he would do if the situation that led to his accident arose again. Plaintiff replied that if it were to happen again, he would "do it the same way" because it was "faster." (Pl. Depo. at pp. 87-88). Management left the meeting for a period of time, and on their return, plaintiff was told that he was immediately suspended from employment for three days as a disciplinary action for "working unsafely and instruct[ing] his co-worker to also perform an unsafe act." The Union representative filed a grievance, asserting that the suspension was not appropriate.

On September 15, 2010, plaintiff was instructed to return to work the next day. He received approximately one hour of safe work place training on handling flex trays, and his supervisor then went through a PowerPoint presentation on skid staging. He took a tour of the facility with another employee, Keith Shockey, and was told that he needed to be aware of possible safety violations. He was then asked to demonstrate his technique for moving pallets. He was given a copy of his disciplinary write up (Exhibit S) which provided, in part, that if he had any future violations of the Company's safe work practices he would be immediately terminated. On September 16, 2010, the Union representative emailed the plant manager and advised him that it would be impossible for plaintiff to comply with that agreement.[1]

---

[1] The email provided, in part, "That's when the argument started about the company saying it didn't' matter how many times it was kicked. It has been a practice that has went on [sic] for several years back there. No one has ever

Plaintiff alleges that, almost immediately that day, he was accused of violating workplace safety rules. An immediate meeting followed the charge, including the plant manager, human resources manager, plaintiff and the Union representative. At some point, plaintiff was asked to leave the meeting and it was made clear to the Union representative that plaintiff would be terminated for this violation. The Union representative negotiated an agreement so that instead of termination, plaintiff would be placed on permanent layoff, allowing him to draw unemployment and receive a neutral job reference. In return, plaintiff had to agree to drop his grievance. Plaintiff asserts that his termination was not based on a workplace safety violation, but was actually in retaliation for filing his workers' compensation claim.

## II.   DISCUSSION

### A.   Review Standards

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Facts are viewed in the light most favorable to the nonmovant, drawing all reasonable inferences in his favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

To prevail on a claim of retaliatory discharge, the plaintiff has the burden of proving three elements: "(1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers' Compensation Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act." *Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 406 (1998) (internal citations omitted); *see also Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir.2012). "Concerning the element of causation, the ultimate issue to be decided is the employer's motive in discharging the

---

been punished for kicking anything back there as far as I know. Now they are saying if he commits any violations of the Standard of Conduct policy involving safety practices, [sic] and procedures during the duration of his employment he will be terminated immediately. That is cruel and unusual punishment. A punishment that no one could survive." (Zimmerman affidavit, Doc. 30).

3

employee." *Clemons*, 704 N.E.2d at 406. *See*, *Beatty v. Olin Corp.*, 693 F.3d 750, 753 (7th Cir. 2012).

### B. Analysis

In this case, plaintiff can meet the first two parts of the retaliation test. He clearly was an employee who was injured and he exercised his rights under the worker's compensation act in Illinois. The critical part of this case is whether plaintiff was terminated by the defendant for exercising his rights under the Worker's Compensation Act, and therefore, suffered retaliation.

Although it is evident that the defendant knew that plaintiff had filed a worker's compensation claim, it is also evident from the record that the plaintiff was *not* terminated, but, rather, chose to settle his grievance outside of the grievance process. The terms, indefinite suspension without rehire, a continuation of his benefits and a neutral reference, were beneficial to the plaintiff. Plaintiff now asserts that he "took" this settlement but it was, in effect, a Hobson's choice. He says he *had* to take it to avoid loss of his benefits.

Although an interesting argument, it is not one which is very successful. Plaintiff was not forced by the defendant into this agreement, rather, his representative negotiated these terms on his behalf. And, this was not his only choice, he could have taken termination and then pursued a retaliation action. Although not an ideal option, and clearly an option which would have resulted in loss of benefits and a potential negative reference for future employment, it was, nonetheless, a viable option.

Simply put, plaintiff cannot, in one breath, agree to a settlement, then turn around and seek legal relief for his election to take termination. Therefore, the Court **FINDS** that judgment is appropriate in this case and **GRANTS** defendant's motion for summary judgment. The Clerk of the Court shall enter judgment accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.**

**DATE:**   **19 December, 2012**

                                              **/s/  WILLIAM D. STIEHL**
                                                  **DISTRICT JUDGE**